**COMP**
DAVID F. SAMPSON, ESQ.,
Nevada Bar No. 6811
AMANDA NALDER, ESQ.,
Nevada Bar No. 16733
LAW OFFICE OF DAVID SAMPSON
630 S. 3rd Street
Las Vegas, NV 89101
Tel: 702-605-1099
Fax: 888-209-4199
david@davidsampsonlaw.com
amanda@davidsampsonlaw.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| N.C., a minor, by and through his father, GEORGE CROSSMAN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>CLARK COUNTY SCHOOL DISTRICT; EAST CAREER AND TECHNICAL ACADEMY; JHONE EBERT, individually and in her capacity as Superintendent of Clark County School District; NATASHA LERUTTE, Individually and her capacity as Principal of East Career and Technical Academy; THOMAS SMITH, individually and in his capacity as Assistant Principal of East Career and Technical Academy; and ROE CORPORATIONS I - V, inclusive, and DOES I through V,<br><br>Defendants. | CASE NO:<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

COMES NOW the Plaintiff, N.C., a minor, by and through his father, GEORGE

CROSSMAN, by and through DAVID F. SAMPSON, ESQ, and AMANDA NALDER, ESQ.,

of the LAW OFFICE OF DAVID SAMPSON and for his causes of action against the Defendants, alleges as follows:

**PARTIES**

1. That Plaintiff, N.C., a minor, by and through his father, GEORGE CROSSMAN, was at all times relevant to this action a resident of Clark County, Nevada.

2. That Plaintiff GEORGE CROSSMAN was, and at all times relevant hereto, an individual residing in Clark County, Nevada, and is the natural father and legal parent of N.C..

3. CCSD is a school district, organized and existing under the Constitution and Laws of the State of Nevada, for public elementary and secondary school purposes. CCSD administers over 370 schools in Clark County, Nevada, including Defendant, East Career and Technical Academy ("ECTA"). CCSD and ECTA have a prior history of violating the statutory and constitutional rights of students by way of viewpoint discrimination. In 2015, CCSD refused to approve an application to start a pro-life club at another district secondary school, West Career Technical Academy. See *Angelique Clark v. Clark County School District, et al.*, United States District Court, District of Nevada, Case No. 2:15-cv-01549-JCM-PAL. That matter was subsequently dismissed, pursuant to stipulation, based on a settlement reached by the parties, pursuant to which CCSD agreed to approve the pro-life club, to treat the pro-life club the same as other non-curriculum clubs, and to pay fees to the plaintiff's attorneys. Also see *East Career And Technical Academy Students For Life et al. v. Clark County School District, et al.*, United States District Court, District of Nevada, Case No. 2:22-cv-01647-RFB-DJA.

That matter was subsequently dismissed, pursuant to stipulation, based on a settlement reached by the parties.

4.  EAST CAREER AND TECHNICAL ACADEMY ("ECTA") is a public secondary school which receives federal financial assistance.

5.  JHONE EBERT ("Ms. Ebert") is the Superintendent of CCSD. She is sued in her individual capacity and in her capacity as the Superintendent of the Clark County School District. Ms. Ebert was the Superintendent of CCSD throughout the time of the misconduct alleged herein.

6.  NATASHA LERUTTE ("LERUTTE") is the Principal of ECTA. She is sued in her individual capacity and in her capacity as Principal of ECTA. LERUTTE was the Principal of ECTA throughout the time of the misconduct alleged herein.

7.  THOMAS SMITH ("SMITH") is an Assistant Principal of ECTA. He is sued in his individual capacity and his capacity as an Assistant Principal of ECTA. SMITH was an Assistant Principal at ECTA throughout the time of the misconduct alleged herein occurred.

8.  That the true names and capacities, whether individual, corporate, partnership, associate or otherwise, of Defendant, DOES I through V and ROES I through V, are unknown to Plaintiff, who therefore sue said Defendant by such fictitious names.  Plaintiff is informed and believe and thereon allege that each of the Defendants designated herein as DOE and ROE are responsible in some manner for the events and happenings referred to and caused damages proximately to Plaintiff as herein alleged, and that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of

DOES I through V and ROES I through V, when the same have been ascertained, and to join such Defendants in this action.

### **JURISDICTION AND VENUE**

9.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), because this action arises under the Constitution and laws of the United States, specifically the First and Fourteenth Amendments and 42 U.S.C. § 1983.

10.   Venue is proper in this District pursuant to 28 U.S.C. §1391(b). A substantial part of the actions or omissions giving rise to this case occurred within the District and, upon information and belief, at least one Defendant resides in the District.

### **FACTUAL ALLEGATIONS**

11.   At all times relevant to this action, N.C., was a student at ECTA.

12.   N.C. applied for and was accepted to the Magnet program at ECTA, following in the footsteps of his older brother.

13.   Prior to the incident that is the subject of this litigation, N.C. had not had any prior disciplinary action against him in CCSD.

14.   Prior to the incident that is the subject of this litigation, N.C. had a 3.465 GPA.

15.   Prior to the incident that is the subject of this litigation, the only negative mark on N.C.'s CCSD school record was a single truancy event.

16.   Prior to the incident that is the subject of this litigation, N.C. enjoyed attending ECTA and was proud to be a "TITAN."

17.   On January 21, 2026, hundreds of students across CCSD participated in a walkout protest expressing opposition to U.S. Immigration and Customs Enforcement ("ICE") and federal immigration enforcement policies (the "Anti-ICE Walkout").

18.   The Anti-ICE Walkout involved students leaving class during school hours to gather on school grounds, carry signs, and express political messages opposing ICE.

19.   Upon information and belief, Defendants, CCSD, ECTA, EBERT, LERUTTE, and SMITH were aware of the planned Anti-ICE Walkout in advance and did not prohibit, discipline, or punish students for participating in it. Upon information and belief, Defendants CCSD, ECTA, EBERT, LERUTTE, and SMITH tolerated, permitted, and/or facilitated the Anti-ICE Walkout.

20.   The students that walked out to participate in the Anti-ICE Walkout carried signs that expressed their opinions, some included words and symbols of hate.



21.   The students that walked out to participate in the anti-ICE protests chanted and yelled profanities. They expressed their personal political beliefs on school grounds.

22.   Upon information and belief, Defendants, CCSD, SMITH, LERUTTE and EBERT were aware of the planned Anti-ICE Walkout in advance and did not prohibit, discipline, or punish students for participating the Anti-ICE Walkout.

23.    Upon information and belief, Defendants, CCSD, SMITH, LERUTTE and EBERT permitted, and/or facilitated students participation in the Anti-ICE protests through CCSD policies and procedures.

24.    CCSD was not just aware of CCSD students walking out of class to protest, CCSD encouraged the students to participate. CCSD released a statement to Fox5 News:

*"CCSD encourages students to be active participants in democracy. The District supports all students who are willing to take the time to research important issues and express their opinions civilly and peacefully."*

25.    CCSD did not punish the CCSD students that participated in the Anti-ICE Walkouts.

26.    On January 22, 2026, N.C., used his first amendment right to express his perspective on the topic by placing pro-law enforcement emblems (approximately 2in. x 2in.) in the hallways of ECTA.

27.    N.C. placed approximately six (6) emblems on the walls of one hallway prior to school so as not to miss class or disrupt learning time.

28.    N.C.'s emblems included the ECTA Titans logo with the words "ICE Immigration Enforcement", "Border Security Academy Deportation Force," and Titans ICE".

29.    The emblems N.C. posted were in support of law enforcement. They made no reference to any individual, any group, or any race. The Pro-law enforcement Emblems did not contain any profanity, threats, slurs, references to race or ethnicity, or targeted harassment of any individual or group. The Pro-law enforcement Emblems expressed a political viewpoint regarding a governmental law enforcement agency, ICE.

30.    N.C.'s placement of the Pro-law enforcement emblems did not cause any substantial or material disruption to school activities, it did not interfere with the rights of other

students, nor did it involve violence, threats of violence, or any conduct outside the protection of the First Amendment.

31. N.C.'s Pro-law enforcement emblems expressed a viewpoint on a matter of public concern, namely, support for federal immigration enforcement (ICE) which is the opposing viewpoint to that expressed during the Anti-ICE Walkout the previous day.

32. N.C.'s expressive conduct constituted pure political speech on a matter of public concern, fully protected by the First Amendment to the United States Constitution.

33. At approximately 6:35 am, ECTA administration received information that there were numerous emblems posted on walls and windows in the hallways of ECTA.

34. Three female students saw the emblems.

35. At least one ECTA teacher saw the emblems and reported seeing a "politically inappropriate item" on the wall.

36. ECTA administration removed all emblems prior to the first bell.

37. At no time during the search to remove the emblems, was learning time disturbed.

38. As part of ECTA's investigation, SMITH performed a search of N.C.'s school issued Chromebook.

39. On or before January 19, 2026, Martin Luther King, Jr. Day, N.C. had searched "Dark Secrets of Martin Luther King," "The Martin Luther King Assassination," "James Earl Ray," and "Tough ICE pictures."

40. SMITH, individually, and as administrator for ECTA, determined these searches to be a racist threat.

41. On January 23, 2026, N.C. was pulled from class to speak with SMITH in a closed-door meeting.

42. During this meeting, SMITH and N.C. met alone in SMITH's office. SMITH asked N.C. to explain his behavior.

43. N.C. explained that he was expressing his support for law enforcement by placing AI generated emblems that supported ICE, around the school. N.C. explained that he did so to open a conversation amongst students at ECTA that have similar beliefs after seeing other students across CCSD express their Anti-ICE political beliefs.

44. SMITH stated that whether N.C.'s actions were acceptable depends on "what lens you look at it through and compare it to if someone put a poster that says 'let's go get whitey'" SMITH asked N.C. "would that make you uncomfortable?" N.C. stated "of course. That means they're out to get me." N.C. also asked "Mr. Smith do you know what ICE is?" SMITH answered "yes." N.C. stated "ICE is a government agency here to enforce the laws of our country not by race or nationality. Simply by whether a person is here legally or illegally."

45. The meeting concluded with SMITH having determined that N.C. was racist and his motivations were racist N.C. was suspended effective immediately, pending a discretionary expulsion from attendance at Clark County Schools for a "racially motivated incident – Race".

46. N.C., was expelled for engaging in peaceful, non-disruptive political expression on school grounds.

47. GEORGE, on behalf of N.C., appealed the decision.

48. On January 26, 2026, an appeal meeting was held. GEORGE, N.C. and SMITH attended a closed door meeting.

49.    The meeting began by SMITH asking GEORGE, "do you know what your son did?" GEORGE answered "yes." SMITH went on to explain how "N.C.'s actions are considered racism because the majority of the school is Hispanic." SMITH went on to compare N.C. posting the pro-ICE emblems to "a burning cross" because it can be perceived as intimidating. GEORGE countered by stating "we are not racist. I will give you the opportunity to take this back and change it or remove it." SMITH sat there for a minute and just said "No."

50.    SMITH had determined that N.C. was racist and his motivations were racist, so the result of this hearing was that N.C. was suspended effective immediately, pending an expulsion.

51.    N.C.'s expulsion for engaging in peaceful, non-disruptive political expression on school grounds was upheld.

52.    GEORGE, on behalf of N.C., appealed the decision again.

53.    On January 30, 2026, an appeal meeting was held. GEORGE, N.C. and SMITH attended, along with Principal, NATASHA LERUTTE in a closed door meeting.

54.    The meeting began with the school presenting their version of the incident. SMITH and LERUTTE stated that they believed N.C.'s actions were racially motivated. SMITH and LERUTTE ignored the facts, and N.C.'s statements regarding his position. SMITH and LERUTTE stated that they are recommending expulsion because it was a high risk situation and the school was placed on a hold. GEORGE and N.C. pled their case again, and even compared the situation to the Anti-ICE walkouts, but SMITH and LERUTTE's response was "N.C. this is your situation we're not going to talk about other situations."

55.   SMITH and LERUTTE, individually, decided, based on their personal bias, that N.C. was a racist and his actions were racially motivated.

56.   SMITH, individually, and in his official capacity as Assistant Principal of ECTA, determined that N.C.'s use of his First Amendment right to free speech is contradictory to the policies and regulations governing the students of the CCSD and ECTA. Accordingly, SMITH, on behalf of ECTA recommended N.C. be expelled from CCSD for "bullying racially motivated incident – Race."

57.   LERUTTE, individually, and in her official capacity as Principal of ECTA, determined that N.C.'s use of his First Amendment right to free speech is contradictory to the policies and regulations governing the students of the CCSD and ECTA. Accordingly, LERUTTE on behalf of ECTA recommended N.C. be expelled from CCSD for "bullying racially motivated incident – Race."

58.   On February 13, 2026, GEORGE met with Matthey Henne, director of Education Services at CCSD, to discuss the recommendation of the LERUTTE on behalf of ECTA that N.C. be expelled from CCSD. GEORGE notified Mr. Henne that GEORGE has chosen to contest the decision of LERUTTE recommending your N.C.'s expulsion.

59.   On February 17, 2026, CCSD sent correspondence to GEORGE stating:

"The recommendation of the principal of East Career and Technical Academy that your child be expelled from the Clark County School District is ACCEPTED. Pending the outcome of the Expulsion Hearing Panel, it will be recommended to the Board of School Trustees of the Clark County School District that your child be expelled from attendance at any Clark County School District school, except Cowan Academic Center. This expulsion is to be a LIMITED/CONTESTED EXPULSION."

60. On February 24, 2026, an in-person hearing was held before the Education Services Division Expulsion Hearing Panel.

61. GEORGE and N.C. attended the Education Services Division Expulsion Hearing Panel with representation.

62. SMITH appeared on behalf of ECTA.

63. CCSD was represented by counsel.

64. Both Parties presented evidence.

65. SMITH did not provide any present any CCSD policies.

66. SMITH only presented his personal belief that "N.C.'s actions were racially motivated because ECTA's population is majority Hispanic."

67. Counsel for CCSD erroneously informed the panel members that "if they found that N.C.'s actions were racially motivated, then they would fall outside First Amendment protection."

68. On February 26, 2026, CCSD sent an email stating: "The Expulsion Hearing Panel met for your child. The determination is as follows: The recommendation for a limited expulsion is UPHELD.

69. GEORGE, on behalf of N.C., appealed the Panel's decision.

70. On March 11, 2026, a hearing was held before the CCSD Expulsion Review Board.

71. GEORGE and N.C. attended with counsel.

72. SMITH and LARUTTE appeared on behalf of ECTA.

73. The panel listened to opening statements from both sides. Then asked questions of N.C. and SMITH and LARUTTE.

74. N.C. explained that he was expressing his support for law enforcement by placing AI generated emblems that supported ICE, around the school. N.C. explained that he did so to open a conversation amongst students at ECTA that have similar beliefs after seeing other students across CCSD express their Anti-ICE political beliefs.

75. On March 12, 2026, CCSD sent correspondence stating:

> "The Expulsion Review Board met on March 11, 2026, to hear your appeal for the principal's recommendation from East Career Technical Academy that your child be expelled from the Clark County School District. The determination is as follows:

> The recommendation of the principal of East Career Technical Academy that your child be expelled from the Clark County School District is UPHELD. In accordance with CCSD Regulation 5114.2 (III)(D)(4) it is the decision of the Expulsion Review Board that your child be expelled from the Clark County School District. This expulsion is to be a LIMITED EXPULSION. Your child will be subject to searches at the sole option of the principal of the school which your child attends and Education Services Division administration. It is expected that your child and a parent/guardian attend the orientation and registration session at Cowan Academic Center. Your child will be expected to begin attending school the next school day following orientation and registration. Please contact Cowan Academic Center personnel at 702-799-6380 to schedule orientation and registration.

> The decision of the Expulsion Review Board in this matter is final."

76. Defendants', CCSD, ECTA, SMITH, and LERUTTE, and each of them, characterization of N.C.'s conduct as "racially motivated" was a pretext. The true basis for Defendants' decision was their personal, political, and ideological disagreement with the viewpoint expressed by the Pro-ICE Emblems.

77. Defendants CCSD, ECTA, SMITH, and LERUTTE, and each of them, permitted, tolerated, and in some instances facilitated the anti-ICE walkout protest, then when N.C. engaged in opposing political expression, Defendants responded by expelling N.C..

78. In justifying the expulsion, Defendants, SMITH and LERUTTE, asserted without factual basis that N.C.'s expressive conduct was "racially motivated." Defendants, SMITH and LERUTTE's conclusions rested entirely upon their own personal and political biases concerning the viewpoint N.C. expressed.

79. Defendants CCSD, ECTA, SMITH, and LERUTTE, and each of them, decision to support and encourage the Anti-ICE Walkout while expelling N.C. for engaging in opposing expression on the same topic constitutes textbook viewpoint discrimination.

80. All of the acts herein alleged of the Defendants CCSD, ECTA, SMITH, and LERUTTE, and each of them, their officers, agents, servants, employees, or persons acting at their behest or direction, were done and are continuing to be done under the color of state law, including the statutes, regulations, customs, policies, and usages of the State of Nevada.

81. By enacting and enforcing policies that withhold from N.C. the status and benefits accorded other CCSD Students, Defendants CCSD, ECTA, SMITH, and LERUTTE, and each of them, have engaged in discrimination against N.C. based on the content and viewpoint of his speech and sent a message of exclusion and disfavor of N.C. and his message, resulting in a chilling impact on N.C.'s efforts at dissemination of his message.

82. As a direct and proximate result of Defendants CCSD, ECTA, SMITH, and LERUTTE, and each of them, conduct, N.C. has suffered and continues to suffer significant harm, including but not limited to: loss of educational opportunity; disruption of academic progress; damage to N.C.'s permanent academic and disciplinary record; harm to reputation; impairment of future educational and professional opportunities; and emotional distress, humiliation, anxiety, and mental anguish.

83. Defendants', CCSD, ECTA, SMITH, and LERUTTE, and each of them, conduct has also caused a chilling effect upon N.C.'s willingness to engage in future political expression, and upon the willingness of other students at ECTA to express disfavored political viewpoints.

84. Unless and until enforcement of the Defendants', and each of them, conflicting policies are enjoined, and Defendants are prohibited from purporting to rely upon policies which purport to allow them discretion to reject messages communicating viewpoints which they disfavor, N.C. will suffer and continue to suffer irreparable harm to his federal constitutional right to freedom of speech, and equal access to the forum for speech opened by Defendants and each of them.

85. The conduct of Defendants, EBERT, LARUTTE, SMITH, ECTA, and CCSD, as alleged herein, violates clearly established statutory and constitutional rights of which a reasonable person would have known.

86. The conduct of Defendants, LARUTTE and SMITH as alleged herein, was committed with the knowledge that Defendants, LARUTTE and SMITH's conduct was in violation of N.C.'s First Amendment right to freedom of speech.

## **FIRST CAUSE OF ACTION**

### ***Defendants' Policies, on Their Face And As Applied,***
### ***Violate the Rights of Freedom of Speech Guaranteed Under the First Amendment of the United States Constitution***

Plaintiff incorporates by this reference all of the allegations of paragraphs 1 through 86, above, as though completely set forth herein.

87. The First Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution,

recognizes and protects the right of freedom of speech.

88.  This includes the rights of students to express their opinions, even on controversial subjects, at school. *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 512-513 (1969).

89.  Governmental efforts to regulate speech based on the "specific motivating ideology or the opinion or perspective of the speaker" is a "blatant" and "egregious" form of impermissible speech restriction. *Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 828-829 (1995).

90.  It is well-established that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969).

91.  A public school may not prohibit or punish student expression unless school officials can demonstrate that the expression would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school," or collide with the rights of others. *Id.* at 509.

92.  Viewpoint discrimination, the act of restricting speech because of the particular viewpoint the speaker expresses, is "an egregious form of content discrimination" and is presumptively unconstitutional. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

93.  N.C.'s placement of the Pro-Law enforcement emblems constituted protected expression on a matter of public concern.

94.  N.C.'s expression did not cause, and was not reasonably forecast to cause, any substantial disruption of school activities or interference with the rights of other students.

95.    Defendants, CCSD, EBERT, ECTA, LERUTTE and SMITH, permitted expression opposing ICE while punishing N.C. for expression supporting ICE. Defendants, and each of them, thereby engaged in viewpoint discrimination by favoring one side of a political debate and punishing the other.

96.    Defendants, ECTA and CCSD's conflicting policies, as written and as applied, impose content-based, discriminatory restrictions upon N.C.'s speech, which are not narrowly tailored to a compelling governmental interest, and consequently violate N.C.'s First Amendment rights to freedom of speech and freedom of association.

97.    Defendants, CCSD, EBERT, ECTA, LERUTTE and SMITH have no compelling reason that would justify the burden imposed upon N.C.'s rights of freedom of speech.

98.    Defendants, CCSD, EBERT, ECTA, LERUTTE and SMITH'S stated justification that N.C.'s expression was "racially motivated" was pretextual and unsupported by any factual evidence. The true motivation for Defendants, CCSD, EBERT, ECTA, LERUTTE and SMITH'S action was disagreement with the viewpoint N.C. expressed.

99.    By expelling N.C. for engaging in protected political expression, Defendants, CCSD, EBERT, ECTA, LERUTTE and SMITH deprived N.C. of rights secured by the First and Fourteenth Amendments to the United States Constitution.

100.    Defendants, CCSD, EBERT, ECTA, LERUTTE and SMITH acted under color of state law within the meaning of 42 U.S.C. § 1983.

101.    The rights violated were clearly established at the time of the violation, and no reasonable official could have believed the conduct alleged herein was lawful. The individual Defendants, EBERT, LERUTTE and SMITH are therefore not entitled to qualified immunity.

102. Defendants, CCSD, EBERT, ECTA, LERUTTE and SMITH'S conduct was intentional, malicious, and in reckless disregard of N.C.'s clearly established constitutional rights, warranting an award of punitive damages against the individual Defendants, CCSD, EBERT, ECTA, LERUTTE and SMITH.

103. Plaintiff, N.C., has been required to retain the LAW OFFICE OF DAVID SAMPSON to prosecute this action, and is entitled to a reasonable attorney's fee.

## SECOND CAUSE OF ACTION

***Defendants' Policies, on Their Face And As Applied, Violate the Rights of Freedom of Speech and Association Guaranteed Under the Nevada Constitution***

Plaintiff incorporates paragraphs 1 through 103 of the Complaint as though said paragraphs were fully set forth herein.

104. The Constitution of the State of Nevada, Article I, Sec. 9, recognizes and protects the right of freedom of speech.

105. Defendants, CCSD, EBERT, ECTA, LERUTTE and SMITH'S conflicting policies, as written and as applied, impose content-based, discriminatory restrictions upon N.C.'s speech, which are not narrowly tailored to a compelling governmental interest, and which violate N.C.'S rights under the Nevada Constitution to freedom of speech and to association.

106. Defendants, CCSD, EBERT, ECTA, LERUTTE and SMITH have no compelling reason that would justify the burden imposed upon N.C.'S rights of freedom of speech and of association.

107. Plaintiff, N.C., has been required to retain the LAW OFFICE OF DAVID SAMPSON to prosecute this action, and is entitled to a reasonable attorney's fee.

### THIRD CAUSE OF ACTION

*Monell Municipal* Liability — Unconstitutional Policy, Custom, or Practice

(42 U.S.C. § 1983 — Against Defendants CCSD, EBERT, SMITH and LERUTTE and ECTA)

Plaintiff incorporates paragraphs 1 through 107 of the Complaint as though said paragraphs were fully set forth herein.

108. That an action that is commonly referred to as a *Monell* claim, which arises when a pleading asserts 1) a deprivation of a federal right; 2) some governmental action that can be traced to the deprivation; 3) a policy or custom demonstrating the governmental entity's fault, i.e. deliberate indifference; and 4) municipal action that was the moving force behind the federal violation.  See, *Dean v. Wexford Health Services*, 18 F.4th 214, 235 (7th Cir. 2021).

109. That the actions of Defendants CCSD, EBERT, SMITH and LERUTTE and ECTA as plead herein satisfy the above-noted elements and constitute such a claim.

110. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality or other local government entity may be held liable under § 1983 where the alleged constitutional deprivation results from an official policy, custom, or practice, or from the actions of a final policymaker.

111. The decision to expel Plaintiff was made, authorized, or ratified by Defendant JHONE EBERT and/or CCSD's Board of Trustees, who are the final policymakers of the District with respect to student discipline.

112. The decision to expel Plaintiff was made or authorized by Defendant SMITH and LERUTTE, who follow the policies and customs of CCSD with respect to student discipline.

113. Upon information and belief, Defendants CCSD, EBERT, and ECTA maintain a policy, custom, or practice of tolerating student expression that aligns with viewpoints favored by school administrators while punishing student expression expressing disfavored viewpoints.

114. Upon information and belief, Defendants CCSD, EBERT, and ECTA have failed to adequately train and supervise its administrators, including the individual Defendants, LERUTTE and SMITH, regarding students' First Amendment rights, the prohibition on viewpoint discrimination, and the proper administration of student discipline in response to political expression. This failure amounts to deliberate indifference to the constitutional rights of students.

115. As a direct and proximate result of Defendants CCSD, EBERT, and ECTA's policies, customs, practices, and/or failure to train, N.C. suffered the violations of constitutional rights alleged herein.

116. As a direct and proximate result of the practice or custom of the Defendants, CCSD, EBERT, SMITH, LERUTTE and ECTA, N.C.'s rights, privileges and immunities secured to him by the Constitution of the United States, including, but not limited to, freedom of speech under the First Amendment to the Constitution. As a direct, proximate and foreseeable result, N.C. suffered damages in an amount according to proof at the time of trial.

117. That the allegations contained herein give rise to an action under 42 U.S.C. § 1983.

118. Plaintiff, N.C., has been required to retain the LAW OFFICE OF DAVID SAMPSON to prosecute this action, and is entitled to a reasonable attorney's fee.

### FOURTH CAUSE OF ACTION

*Violation of the First Amendment  --Retaliation for Protected Speech*

*(42 .S.C. § 1983 Against All Defendants)*

Plaintiff incorporates paragraphs 1 through 118 of the Complaint as though said paragraphs were fully set forth herein.

119.  N.C. engaged in constitutionally protected speech when he placed the Pro-law enforcement emblems, expressing a political viewpoint on a matter of public concern.

120.  Defendants, CCSD, EBERT, ECTA, LERUTTE and SMITH took adverse action against N.C. by expelling him from school, that would chill a person of ordinary firmness from continuing to engage in protected expression.

121.  There is a causal connection between N.C.'s protected expression and Defendants, CCSD, EBERT, ECTA, LERUTTE and SMITH'S adverse action. Defendants, CCSD, EBERT, ECTA, LERUTTE and SMITH'S adverse action was substantially motivated by N.C.'s protected expression. Indeed, N.C.'s expression is the only rational explanation for Defendants, CCSD, EBERT, ECTA, LERUTTE and SMITHS' decision to expel N.C..

122.  As a direct and proximate result of Defendants' retaliation, N.C. has suffered the damages described herein.

WHEREFORE, Plaintiffs, expressly reserving the right herein to include all items of damage, demand judgment against the Defendants, and each of them, as follows:

CLAIM FOR RELIEF:

    1.  General damages in an amount in excess of $15,000.00.;

    2.  A permanent injunction (i) ordering Defendants, and each of them, to rescind the expulsion and reinstate N.C. as a student in good standing, (ii) ordering Defendants, and each of them,  to expunge all records and references relating to

the expulsion from N.C.'s academic and disciplinary files, and (iii) enjoining Defendants, and each of them, from further viewpoint-discriminatory discipline;

3. Compensatory damages in an amount to be proven at trial, to compensate N.C. for economic loss, loss of educational opportunity, emotional distress, humiliation, damage to reputation, and all other harms caused by Defendants' conduct;

4. Nominal damages;

5. Punitive damages against the individual Defendants in their individual capacities, in an amount sufficient to punish and deter such conduct;

6. Reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988;

///

///

///

///

7. For such other and further relief as to the Court may seem just and proper in the premises.

DATED THIS 30th day of April, 2026

LAW OFFICE OF DAVID SAMPSON

BY: __/s/ *Amanda Nalder*_____
DAVID F. SAMPSON, ESQ.,
Nevada Bar No. 6811
AMANDA NALDER, ESQ.,
Nevada Bar No. 16733
LAW OFFICE OF DAVID SAMPSON
630 S. 3rd Street
Las Vegas, NV 89101

Tel: 702-605-1099
Fax: 888-209-4199
david@davidsampsonlaw.com
amanda@davidsampsonlaw.com
Attorneys for Plaintiff